# EXHIBIT "A"

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

22CV3113

Daniel Jack

1185 To Lani Drive

Stone Mountain, GA 30083

Case No.: _____

Plaintiff

VS

Select Portfolio Servicing, Inc

c/o Corporation Servicing Co

2 Sun Court, Ste 400, Peachtree Corners, GA 30092

Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Daniel Jack
1185 To Lani Drive
stone Mountain, GA 30083

Phone:973-580-4162
Email: starjaxx@yahoo.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____18th_____ day of _____MARCH_____, 20__22__.

Honorable Debra DeBerry
Clerk of Superior Court
/s/ Tareya Faison
By_____
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

FILED 3/18/2022 3:15 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT DEKALB COUNTY
## STATE OF GEORGIA

DANIEL JACK,
Plaintiff,
v.
SELECT SERVICING PORTFOLIO,
INC.
Defendant.

CIVIL ACTION
FILE NO:     22CV3113

## **AFFIDAVIT OF DANIEL JACK**

1. My name is Daniel Jack, and I am a citizen in good standing.

2. I am over the age of majority and present the following issues of fact.

3. I am the plaintiff in the above styled action in all respects.

4. I give this affidavit in support of the Verified Complaint attached hereto.

5. All the statements made in the foregoing Verified Complaint and are true to

the best of my knowledge and ability.

Daniel Jack, Affiant

Sworn to and subscribed before me

this 15 day of March ,2022.

Notary Public
My commission expires on 4/18/2022

FILED 3/18/2022 3:15 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT DEKALB COUNTY
## STATE OF GEORGIA

DANIEL JACK,

Plaintiff,

v.

SELECT PORTFOLIO SERVICING, INC.
Defendant.

CIVIL ACTION
FILE NO:     22CV3113

## VERIFIED COMPLAINT

1. Plaintiff, Daniel Jack, hereby file this Complaint, and allege, claim, and complain against the Defendant, Select Portfolio Servicing Inc, as follows:

## JURISDICTION AND VENUE

2. Jurisdiction in this Court is proper by virtue of GC§ 15-6-8.

3. Venue is proper in this Court in that the residential property that is the subject of this action is situated in Dekalb County and a substantial part of the events giving rise to the Complaint occurred therein.

## THE PARTIES

4. Plaintiff, Daniel Jack, along with his wife Rosa Jack are the current owners of record of the residential real property identified herein _infra_.

1

5. Defendant, Select Portfolio Servicing Inc is a foreign corporation doing

   business in Dekalb County, Georgia, having its principle address as: 3217

   S Deker Lake Drive, Salt lake City, Utah 84119 and can be served at its

   listed agent: Corporation Service Company, 2 Sun Court, Suite 400

   Peachtree Corners, Georgia 30092 and is and was at all times material

   hereto.

The residential real property that is the subject of this action (the "Property") is
located at: 1185 To Lani Drive, Stone Mountain, GA 30083 and is legally
described as:

ALL THAT CERTAIN PROPERTY SITUATED IN THE CITY OF STONE
MOUNTAIN, IN THE COUNTY OF DEKALB AND STATE OF GEORGIA,
AND BEING DESCRIBED IN A DEED DATED 3/29/2006 IN BOOK 18555,
PAGE 51 AMOUNG THE LAND RECORDS OF THE COUNTY SET FORTH
ABOVE REFERENCED AS FOLLOWS: LANDLOT 223, DISTRICT 15, 5.459
ACRES, TRACT B PARCEL ID NUMBER: 1522301385.

## FACTS

6. Plaintiff's claims arise out of conduct related to a residential mortgage loan

   transaction.

7. On or about July 24, 2006, Plaintiff incurred a financial obligation when

   the Plaintiff and his wife purchased their home. The purchase amount of

   the home was $243,167.50.

8. The loan was evidenced by a "Deed To Secure Debt," naming Wachovia

   Bank, National Bank Association, as the "Lender". A copy of the "Deed

   To Secure Debt" is attached hereto as Exhibit "A" respectively.

9.  On or about October 3, 2008, Wachovia Bank, National Bank Association, was absorbed by Wells Fargo Bank via acquisition.

10. Plaintiff's "Deed To Secure Debt" became the asset of Wells Fargo by virtue of the October 3, 2008, acquisition of Wachovia Bank.

11. Sometime thereafter, Wells Fargo sent Plaintiff notice that Defendant Select Portfolio Servicing Inc would be servicing Plaintiff's loan account and all payments should be directed thereto.

12. On or about May 8, 2020, Wells Fargo Bank assigned Plaintiff's "Deed To Secure Debt" via "Corporate Assignment of Security Deed" to U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2020-PM2 at C/O Firstkey Mortgage, LLC. See Exhibit "B", respectively.

13. Plaintiff was not notified that the loan account "Deed To Secure Debt" had transferred from Wells Fargo to U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2020-PM2 at C/O Firstkey Mortgage, LLC until January 24, 2022 via letter from Defendant Select Portfolio Servicing Inc twenty (20) months after the May 8, 2020 "Corporate Assignment of Security Deed" and one (1) month after Defendant's acceptance of Plaintiff's settlement offer described herein below. See Exhibit "C", respectively.

3

14. On or about September 13, 2021, Plaintiff contacted Defendant Select Portfolio Servicing Inc and requested the payoff to Plaintiff's Loan Account. The payoff balance, according to Defendant's September 25, 2021, statement to Plaintiff was $200,783.32. See Exhibit "D", respectively.

15. On December 1, 2021, Plaintiff forwarded Defendant Select Portfolio Servicing Inc a letter disputing the $198,274.38 loan amount payoff statement from November 2021 as being inaccurate and higher than Plaintiff calculated as being actually owed on their loan. Additionally, Plaintiff's letter advised Defendant Select Portfolio Servicing Inc that he would send them a Cashier's Check in the amount of $20,000.00 in effort to settle the disputed account balance. See Exhibit "E", respectively.

16. On or about December 15, 2021, Plaintiff forwarded Defendant Select Portfolio Servicing Inc the above-mentioned Cashier's Check in the amount of $20,000.00 with the following restrictive language: "By cashing this check Wells Fargo/ SPS agrees to except this $20,000.00 payment in leu of the $198,274.38 disputed debt on Plaintiff's loan account. See Exhibit "F", respectively.

17. On or about December 17, 2021, Plaintiff received notice from the Defendant Select Portfolio Servicing Inc in acknowledgement of the

4

18. On or about December 24, 2021, Defendant Select Portfolio Servicing Inc accepted Plaintiff's settlement offer and cashed the $20,000.00 cashier's check. See Exhibit "H", respectively.

19. On or about January 6, 2022, the Defendant forwarded to the Plaintiff Select Portfolio Servicing Inc a letter thanking the Plaintiff for accepting Defendant's settlement offer of the disputed debt. The letter also demanded a release of the lean on Defendant's home. See Exhibit "I", respectively.

20. In response to Plaintiff's demand for the release of the lean, and after Defendant cashed the settlement check, Defendant Select Portfolio Servicing Inc forwarded Plaintiff the letter mentioned above at paragraph 13 advising Plaintiff that the loan account belonged the above-mentioned Trust in paragraphs 12 and 13. See Exhibit "C", respectively.

21. Plaintiff has been damaged by the Defendant's failure to abide by the terms of the settlement agreement whereby Defendant refuses to release the lien and remove the "Deed To Secure Debt" from the subject property.

## COUNT ONE:
## FAILURE TO HONOR SETTLEMENT AGREEMENT

22. Plaintiff hereby re-alleges and incorporates by reference each and every allegation above, as if fully set forth verbatim herein.

23.  Plaintiff alleges that his December 1, 2021, letter disputing the payoff loan amounts, and offer to settle the loan account was sent in good faith. See Exhibit "B", respectively.

24.  Plaintiff alleges that the Defendant's cashing of his Cashier's Check with its restrictive language, coupled along with his December 1, 2021, dispute letter and after Defendant's acknowledgement/receipt of Plaintiff's dispute letter, amounts to an "Accord and Satisfaction."

25.  As a result of Defendant's failure to honor the settlement agreement and release the lien on Plaintiff's home, Plaintiff is entitled to have judgement in his favor which includes but is not limited to, the release of the lien on the title to his home, damages, and court cost.

## LAW AND DISCUSSION

26.

## Accord and Satisfaction

O.C.G.A. 13-4-103 -

13-4-103. Acceptance of less than amount of debt

(a) Except as otherwise provided in this Code section, an agreement by a creditor to receive less than the amount of his debt cannot be pleaded as an accord and

6

satisfaction unless it is actually executed by the payment of the money, the giving of additional security, the substitution of another debtor, or some other new consideration.

(b) Acceptance by a creditor of a check, draft, or money order marked "payment in full" or with language of equivalent condition, in an amount less than the total indebtedness, shall not constitute an accord and satisfaction unless:

(1) A bona fide dispute or controversy exists as to the amount due; or

(2) Such payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt.

In the case before the Court, Plaintiff forwarded the Defendant a letter disputing the loan balance amount and offered to send the Defendant a cashier's check in effort to settle the disputed account. Exhibit "G".

In the case of Hawthorne Grading & Hauling v. Rampley, 252 Ga.App. 771, 556 S.E.2d 912 (2001), the Court of Appeals of Georgia have consistently held:

**"In the absence of an independent agreement by a creditor, that the acceptance of an amount less than the indebtedness will be taken, or is taken, in full satisfaction thereof, the mere acceptance [by a creditor] of a check for a less sum than the amount of an unliquidated debt, remitted by the debtor with notice that it is in full satisfaction of the debt, will not amount to an accord and satisfaction unless there existed previously to the tender a bona fide dispute by the debtor as to the correctness of the amount of the debt."**

In the instant case, Defendant acknowledged the Plaintiff's dispute. See Exhibit "G". Thereafter, Defendant cashed Plaintiff's cashier's check that was sent to settle the disputed debt. See Exhibit "H".

7

In Hawthorne, Id. As in the case before the Court, the debtor tendered check along with letter noting that he disputed the amount owed, creditor's acceptance of the check constituted an accord and satisfaction.

27.

As a direct and proximate cause of Defendant's refusal to honor the settlement agreement and release the lien on Plaintiff's home in accordance with the terms of O.C.G.A. 13-4-103 (1) and (2), Plaintiff is entitled to have judgement in his favor which includes but is not limited to, the release of the lien on the title to his home, damages, and court cost.

Respectfully submitted this ___ day of March 2022.

_Daniel Jack_

Daniel Jack

1185 To Lani Drive, Stone
Mountain, GA 30083

8

# EXHIBIT

## "A"

Deed Book 19000 Pg 704
Filed and Recorded Aug-03-2006 10:06am
2006-0148117
Georgia Intangible Tax Paid $730.50
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

Prepared By/Return To:
MICHAEL JAHN
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke VA 24022

## DEED TO SECURE DEBT

THIS DEED is made this day of ___24___  ___July, 2006___ , among the Grantor,
___DANIEL JACK & ROSA L JACK___
___DANIEL LEE JACK, JR. NONE STATED___

(herein "Borrower"), and Grantee, Wachovia Bank, National Association, a national banking association organized and existing under the laws of the United States of America, whose address is Wachovia Bank, National Association, 301 South College Street, VA 0343, Charlotte, North Carolina  28288-0343 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S.$ ___243167.50___
which indebtedness is evidenced by Borrower's Note dated ___07/24/08___ and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on ___07/23/36___

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed and the payment of any other or future indebtedness of Borrower to Lender; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to Lender and Lender's successors and assigns with power of sale the following described Property located in the County of ___DEKALB___
State of Georgia:

DEED DATE: 03/29/06  RECORDED: 03/28/06  BOOK/INST: 18555  PAGE: 51
PARCEL/TAX ID #: 1522301385      TWN/BORO: CITY OF STONE MOUNTAIN
•SEE ATTACHED LEGAL DESCRIPTION•
LOT: TRACT 3

which has the address of ___1185 TO-LENI DRIVE___
___STONE MOUNTAIN GA  30083___
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the Property covered by this Deed; and all of the foregoing, together with said Property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property."

**Any rider ("Rider") attached hereto and executed of even date is incorporated herein and the covenants and agreements of the Rider shall amend and supplement the covenants and agreements of this Deed, as if the Rider were a part hereof.**

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

023153 (Rev 11)                                1                          (02/04) GA Deed to Secure Debt
•0614600100•

Deed Book 1 9 0 0 0 Ps   7 0 5

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal and Interest.**  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.  This Deed secures payment of said Note according to its terms, which are incorporated herein by reference.

**2.   Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under the Note and section 1 hereof shall be applied by Lender first to interest due on the Note, second to the principal due on the Note, and then to late charges due on the Note.

**3.   Prior Deeds to Secure Debt, Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations, under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due.  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

**4.   Hazard Insurance.**  a) Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including but not limited to floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.  If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section 6.

b) All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

c) Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Deed, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed, whether or not then due.  The 30-day period will begin when the notice is given.

d) Except as provided in subsection 4(e) below, should partial or complete destruction or damage occur to the Property, Borrower hereby agrees that any and all instruments evidencing insurance proceeds received by Lender as a result of said damage or destruction, shall be placed in a non-interest bearing escrow account with Lender.  At Lender's discretion, Lender may release some or all of the proceeds from escrow after Borrower presents Lender with a receipt(s), invoice(s), written estimates(s) or other document(s) acceptable to Lender which relates to the repair and/or improvements of the Property necessary as a result of said damage and/or destruction.  Absent an agreement to the contrary, Lender shall not be required to pay Borrower any interest on the proceeds held in the escrow account.  Any amounts remaining in the account after all repairs and/or improvements have been made to Lender's satisfaction, shall be applied to the sums secured by this Deed.  Borrower further agrees to cooperate with Lender by endorsing all checks, drafts and/or other instruments evidencing insurance proceeds and any necessary documents.  Should Borrower fail to provide any required endorsement and/or execution within 30 days after Lender sends Borrower notice that Lender has received an instrument evidencing insurance proceeds, or document(s) requiring Borrower's signature, Borrower hereby authorizes Lender to endorse said instrument and/or document(s) on Borrower's behalf, and collect and apply said proceeds at Lender's option, either to restoration or repair of the Property or to sums secured by this Deed.  It is not the intention of either party that this escrow provision, and/or Lender's endorsement or execution of an instrument(s) and/or document(s) on behalf of Borrower creates a fiduciary or agency relationship between Lender and Borrower.

e) Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in sections 1 and 2 or change the amount of the payments.  If under section 16 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed.

**5.   Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold.  If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the Declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

EX A 2

Deed Book 19000 Ps 706

6. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender, at Lender's option, upon notice to Borrower may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest in the Property, including but not limited to, disbursement of taxes, assessments, insurance premiums, cost of repairs, costs and reasonable attorney's fees and entry upon the Property to make repairs. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law. Borrower shall pay the amount of all mortgage insurance premiums in the manner provided under section 4 hereof.

Any amounts disbursed by Lender pursuant to this section 6 or advances to the prior security deed holder, with interest thereon from the date of disbursal, shall become additional indebtedness of Borrower secured by this Deed repayable upon demand. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this section 6 shall require Lender to incur any expense or take any action hereunder.

7. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

9. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Borrower shall remain liable for full payment of the principal and interest on the Note (or any advancement or obligation) secured hereby, notwithstanding any of the following: (a) the sale of all or a part of the premises; (b) the assumption by another party of Borrower's obligations hereunder; (c) the forbearance or extension of time for payment or performance of any obligation hereunder, whether granted to Borrower or a subsequent owner of the Property; and (c) the release of all or any part of the premises securing said obligations or the release of any party who assumes payment of the same. None of the foregoing shall in any way affect the full release and effect of the lien of this Deed or impair Lender's right to a deficiency judgment (in the event of foreclosure) against Borrower or any party assuming the obligations hereunder to the extent permitted by applicable law. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

10. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of section 15 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note: (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed; (b) is not personally liable on the Note or under this Deed; and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

11. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower or the current owner at the Property Address or at such other address as Borrower may designate in writing by notice to Lender as provided herein, and any other persons personally liable on the Note as their names and addresses appear in Lender's records at the time of giving notice and (b) any notice to Lender shall be given by first class mail to Lender's address at Wachovia Bank, National Association, Retail Credit Servicing, P.O. Box 50010, Roanoke, VA 24022 or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

12. **Governing Law; Severability.** The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflicts shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

EX A3

Deed Book 19000 Ps  707

**13. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note, this Deed and Rider(s) at the time of execution or after recordation hereof.

**14. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**15. Transfer of the Property or a Beneficial Interest in Borrower, Assumption.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, for any reason, declare all the sums secured by this Deed to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed. If Borrower fails to pay in full these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed without further notice or demand on Borrower.

This Deed may not be assumed by a purchaser without the Lender's consent. If an assumption is allowed, Lender may charge an assumption fee and require the person(s) assuming the loan to pay additional charges as authorized by law.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**16. Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums under the Note secured by this Deed or any prior security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without demand or notice and may invoke the power of sale, and any other remedies permitted by applicable law. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, attorneys' fees equal to fifteen percent (15%) of the outstanding balance and all accrued interest thereon, and costs of documentary evidence, abstracts and title reports.

If Lender invokes the power of sale, Lender shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Lender shall give public notice of sale by advertisement, in accordance with applicable law. Lender, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed conveying the Property so sold with special warranty of title. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to attorneys' fees equal to fifteen percent (15%) of the outstanding balance and all accrued interest and costs of title evidence; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Deed; and (d) the excess, if any, to the person or persons legally entitled thereto. Lender shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at such sale.

If the property is sold pursuant to this section, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**17. Assignment of Surplus Proceeds; Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender all surplus funds which may come into the hands of the holder of any prior security deed, mortgage or deed of trust upon foreclosure of the same, hereby directing that all surplus proceeds be paid over to Lender.
As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that so long as Borrower is not in default hereunder, Borrower shall, prior to acceleration under section 16 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under section 16 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to receiver's fees, premiums on receiver's bonds and attorneys' fees equal to fifteen percent (15%) of the

*Ex A4*

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=47628054&key1=1900&key2=Y&2=704&county=44&countyname=DEKALB&userid=76856&a...

Deed Book 17000 Pg 708

outstanding balance and all accrued interest, and then to the sums secured by this Deed. The receiver shall be liable to account only for those rents actually received.

**18. Loan Charges.** If the loan secured by this Deed is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

**19. Legislation.** If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, this Deed or any Rider, unenforceable according to their terms, or of all or of the sums secured hereby uncollectible, as otherwise provided in this Deed or the Note, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by this Deed to be immediately due and payable.

**20. Release.** Upon payment of all sums secured by this Deed, this Deed shall become null and void and Lender shall release this Deed. If Lender is requested to release this Deed, all instruments evidencing satisfaction of the indebtedness secured by this Deed shall be surrendered to Lender. Borrower shall pay all costs of recordation, if any. Lender, at Lender's option, may allow a partial release of the Property on terms acceptable to Lender and Lender may charge a release fee.

**21. Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

**22. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal, or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this section 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this section 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

**23. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith shall not constitute a novation.

**24. Deed to Secure Debt.** This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



EH ☐

5

Mortgage.

Daniel Jack
Rosa L. Jack

STATE OF N.J

COUNTY OF Essex

This foregoing instrument was acknowledged before me this _____ 25 _____ (date) by
July    2006

who is personally known to me or who has produced _____
(type of identification) as identification.

NoTARey
expires
4/19/2007

_____
Notary Public

Mary F. Henderson
Notary Public Name (Typed, Printed or Stamped)

Deed Book 19000 Pg 710



ExA-6

*Exhibit A*

LEGAL DESCRIPTION    0614600100 ad

ALL THAT CERTAIN PROPERTY SITUATED IN THE CITY OF STONE
MOUNTAIN, IN THE
COUNTY OF DEKALB AND STATE OF GEORGIA, AND BEING DESCRIBED IN
A DEED DATED
3/29/2006  AND RECORDED 3/29/2006 IN BOOK 18555, PAGE 51 AMONG THE
LAND RECORDS
OF THE COU NTY AND STATE SET FORTH ABOVE AND REFERENCED AS
FOLLOWS: LANDLOT
223, DISTRICT 15, 5.459 ACRES, TRACT B    PARCEL ID NUMBER: 1522301385

```
Deed Book 19000 Ps  711
    Linda Carter
   Clerk of Superior Court
   DeKalb County, Georgia
```

# EXHIBIT

# "B"

# EXHIBIT

Deed Book 19000 Ps 704
Filed and Recorded Aug-03-2006 10:06am
2006-0148117
Georgia Intangible Tax Paid $730.50
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

**Prepared By/Return To:**
MICHAEL JAHN
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke, VA 24022

## DEED TO SECURE DEBT

THIS DEED is made this day of __24  July, 2006_____, among the Grantor,
_____DANIEL JACK & ROSA L JACK_____
_____DANIEL LEE JACK, JR. NONE STATED_____

(herein "Borrower"), and Grantee, Wachovia Bank, National Association, a national banking association organized and existing under the laws of the United States of America, whose address is Wachovia Bank, National Association, 301 South College Street, VA 0343, Charlotte, North Carolina  28288-0343 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S.$_____243167.50_____
which indebtedness is evidenced by Borrower's Note dated _____07/24/06_____ and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on _____07/23/36_____.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed and the payment of any other or future indebtedness of Borrower to Lender; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to Lender and Lender's successors and assigns with power of sale the following described Property located in the County of DEKALB_____
State of Georgia:

DEED DATE: 03/29/06  RECORDED: 03/29/06  BOOK/INST: 18555  PAGE: 51
PARCEL/TAX ID #: 1522301385      TWP/BORO: CITY OF STONE MOUNTAIN
•SEE ATTACHED LEGAL DESCRIPTION•
LOT: TRACT B

which has the address of _1185  TO-LENI DRIVE_____
_____STONE MOUNTAIN GA  30083_____
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the Property covered by this Deed; and all of the foregoing, together with said Property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property."

**Any rider ("Rider") attached hereto and executed of even date is incorporated herein and the covenants and agreements of the Rider shall amend and supplement the covenants and agreements of this Deed, as if the Rider were a part hereof.**

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

023153 (Rev 11)                                1                    (02/04) GA Deed to Secure Debt
•0614600100•

Deed Book 1 9 0 0 0 Ps  705

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal and Interest.**  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note. This Deed secures payment of said Note according to its terms, which are incorporated herein by reference.

**2.   Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under the Note and section 1 hereof shall be applied by Lender first to interest due on the Note, second to the principal due on the Note, and then to late charges due on the Note.

**3.   Prior Deeds to Secure Debt, Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations, under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

**4.   Hazard Insurance.**  a) Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including but not limited to floods, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section 6.

b) All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

c) Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Deed, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed, whether or not then due. The 30-day period will begin when the notice is given.

d) Except as provided in subsection 4(e) below, should partial or complete construction or damage occur to the Property, Borrower hereby agrees that any and all instruments evidencing insurance proceeds received by Lender as a result of said damage or destruction, shall be placed in a non-interest bearing escrow account with Lender. At Lender's discretion, Lender may release some or all of the proceeds from escrow after Borrower presents Lender with a receipt(s), invoice(s), written estimates(s) or other document(s) acceptable to Lender which relates to the repair and/or improvements of the Property necessary as a result of said damage and/or destruction. Absent an agreement to the contrary, Lender shall not be required to pay Borrower any interest on the proceeds held in the escrow account. Any amounts remaining in the account after all repairs and/or improvements have been made to Lender's satisfaction, shall be applied to the sums secured by this Deed. Borrower further agrees to cooperate with Lender by endorsing all checks, drafts and/or other instruments evidencing insurance proceeds and any necessary documents. Should Borrower fail to provide any required endorsement and/or execution within 30 days after Lender sends Borrower notice that Lender has received an instrument evidencing insurance proceeds, or document(s) requiring Borrower's signature, Borrower hereby authorizes Lender to endorse said instrument and/or document(s) on Borrower's behalf, and collect and apply said proceeds at Lender's option, either to restoration or repair of the Property or to sums secured by this Deed. It is not the intention of either party that this escrow provision, and/or Lender's endorsement or execution of an instrument(s) and/or document(s) on behalf of Borrower creates a fiduciary or agency relationship between Lender and Borrower.

e) Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in sections 1 and 2 or change the amount of the payments. If under section 16 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed.

**5.   Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the Declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

023153 (Rev 11)                                   2                          (02/04) GA Deed to Secure Debt

6. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender, at Lender's option, upon notice to Borrower may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest in the Property, including, but not limited to, disbursement of taxes, assessments, insurance, costs and reasonable attorney's fees and entry upon the Property to make repairs. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Borrower shall pay the amount of all mortgage insurance premiums in the manner provided under section 4 hereof.

Any amounts disbursed by Lender pursuant to this section 6 or advances to the prior security deed holder, with interest thereon from the date of disbursal, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this section 6 shall require Lender to incur any expense or take any action hereunder.

7. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

9. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Borrower shall remain liable for full payment of the principal and interest on the Note (or any advancement or obligation) secured hereby, notwithstanding any of the following: (a) the sale of all or a part of the premises; (b) the assumption by another party of Borrower's obligations hereunder; (c) the forbearance or extension of time for payment or performance of any obligation hereunder, whether granted to Borrower or a subsequent owner of the Property; and (d) the release of all or any part of the premises securing said obligations or the release of any party who assumes payment of the same. None of the foregoing shall in any way affect the full force and effect of the lien of this Deed or impair Lender's right to a deficiency judgment (in the event of foreclosure) against Borrower or any party assuming the obligations hereunder to the extent permitted by applicable law.

Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

10. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of section 15 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note: (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed; (b) is not personally liable on the Note or under this Deed; and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

11. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower or the current owner at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and any other person personally liable on this Note as these names and addresses appear in Lender's records at the time of giving notice and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

Association, Retail Credit Service, P. O. Box 50010, Roanoke, VA 2 4022 or to such other address as a Lender may designate by notice to Borrower as provided herein, and any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

12. **Governing Law; Severability.** The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflicts shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

Deed Book 19000 Ps 707

**13. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note, this Deed and Rider(s) at the time of execution or after recordation hereof.

**14. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**15. Transfer of the Property or a Beneficial Interest in Borrower; Assumption.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, for any reason, declare all the sums secured by this Deed to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed. If Borrower fails to pay in full these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed without further notice or demand on Borrower.

This Deed may not be assumed by a purchaser without the Lender's consent. If an assumption is allowed, Lender may charge an assumption fee and require the person(s) assuming the loan to pay additional charges as authorized by law.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**16. Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums under the Note secured by this Deed or any prior security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without demand or notice and may invoke the power of sale, and any other remedies permitted by applicable law. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, attorneys' fees equal to fifteen percent (15%) of the outstanding balance and all accrued interest thereon, and costs of documentary evidence, abstracts and title reports.

If Lender invokes the power of sale, Lender shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Lender shall give public notice of sale by advertisement, in accordance with applicable law. Lender, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed conveying the Property so sold with special warranty of title. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to attorneys' fees equal to fifteen percent (15%) of the outstanding balance and all accrued interest and costs of title evidence; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Deed; and (d) the excess, if any, to the person or persons legally entitled thereto. Lender shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at such sale.

If the property is sold pursuant to this section, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**17. Assignment of Surplus Proceeds; Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender all surplus funds which may come into the hands of the holder of any prior security deed, mortgage or deed of trust upon foreclosure of the same, hereby directing that all surplus proceeds be paid over to Lender.
As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that so long as Borrower is not in default hereunder, Borrower shall, prior to acceleration under section 16 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under section 16 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to receiver's fees, premiums on receiver's bonds and attorneys' fees equal to fifteen percent (15%) of the

outstanding balance and all accrued interest, and then to the sums secured by this Deed. The receiver shall be liable to account only for those rents actually received.

18. **Loan Charges.** If the loan secured by this Deed is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

19. **Legislation.** If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, this Deed or any Rider, unenforceable according to their terms, or all or any part of the sums secured hereby uncollectable, as otherwise provided in this Deed or the Note, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by this Deed to be immediately due and payable.

20. **Release.** Upon payment of all sums secured by this Deed, this Deed shall become null and void and Lender shall release this Deed. If Lender is requested to release this Deed, all instruments evidencing satisfaction of the indebtedness secured by this Deed shall be surrendered to Lender. Borrower shall pay all costs of recordation, if any. Lender, at Lender's option, may allow a partial release of the Property on terms acceptable to Lender and Lender may charge a release fee.

21. **Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

22. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal, or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this section 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this section 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

23. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith shall not constitute a novation.

24. **Deed to Secure Debt.** This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

6

Deed Book 19000 Ps 709

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR SECURITY DEEDS

[___] If checked, this instrument is second only to that certain current first priority security deed in favor of and/or currently being serviced by ____MERS AS NOMINEE FOR ACCREDITED HOME LEND___ dated __03/12/04__ , and recorded _____ in Deed Book ___16939__, Page ___480___ , __DEKALB__ _____ County, Georgia records, and it is agreed that any default under said prior security deed(s) may at the option of Lender herein or its successor in title be declared and deemed to be a default under the terms of the within instrument. Lender shall have the right but not the obligation to make advances to the holder of any prior security deed noted above or otherwise in order to cure any default thereunder, and any advances so made shall be governed by the provisions of section 6 hereunder. Borrower hereby assigns and authorizes payment to Lender herein and its successors in title of any surplus funds arising from the foreclosure of said prior security deed(s).

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed to give Notice to Lender, at Lender's address at Wachovia Bank, National Association, Retail Credit Servicing, P.O. Box 50010, Roanoke, VA 24022 of any default under the superior encumbrance and of any sale or other foreclosure action.

**BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE STATE OF GEORGIA OR THE CONSTITUTION OF THE UNITED STATES OF AMERICA TO NOTICE OR TO A JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED TO LENDER HEREUNDER BY THIS DEED, AND BORROWER WAIVES BORROWER'S RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE UNDER POWER DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISION OF THIS DEED ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT PRIOR NOTICE OR JUDICIAL HEARING. ALL WAIVERS BY BORROWER IN THIS SECTION HAVE BEEN MADE VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY BY BORROWER, AFTER BORROWER HAS BEEN AFFORDED AN OPPORTUNITY TO BE INFORMED BY COUNSEL OF BORROWER'S CHOICE AS TO THE MEANING AND EFFECT HEREOF.**

IN WITNESS WHEREOF, Borrower has executed and sealed this Deed and adopted as his seal the word "(SEAL)" appearing beside his name and by such execution he accepts and agrees to the terms and covenants contained in this Deed and in any Rider(s) executed by Borrower and recorded herewith.

| | |
|---|---|
| _Lisa Harewood_ | _Daniel Jack_ [SEAL] |
| Witness | Borrower |
| | DANIEL JACK |
| LISA HAREWOOD | _Rosa L. Jack_ [SEAL] |
| Witness Name Printed or Typed | Borrower |
| | ROSA L JACK |
| | _Daniel Lee Jack Jr._ [SEAL] |
| Witness | Borrower |
| | DANIEL LEE JACK, JR |
| Witness Name Typed or Printed | Borrower [SEAL] |

STATE OF GEORGIA )
COUNTY OF __Dekalb__ ) SS
                      )

On (date) __9/24/06__ _____ before me personally appeared _____
                        DANIEL JACK
                        ROSA L JACK
                        DANIEL LEE JACK, JR

whose name(s) is/are signed to the foregoing conveyance and who is/are personally known to me or proved to me on the basis of satisfactory evidence, who acknowledged before me on this day, that, being informed of the contents of this conveyance, he/she/they executed the same voluntarily.

WITNESS my hand and official seal.

Signature: _____ [SEAL]

Elicia Warner Monroe
Notary Public Gwinnett County, GA
Notary Name: My Commission Expires May 31, 2010

My Commission Expires: __5/31/2010__

025163 (Rev 11)                                       6



# SPS | SELECT Portfolio SERVICING, inc.

Sign up for paperless delivery at www.spservicing.com
Paperless

January 24, 2022

DANIEL L JACK
ROSA JACK
1185 TO LANI DR
STONE MTN, GA 30083

Account Number:    0028612638
Property Address:    1185 TO LANI DR
STONE MOUNTAIN, GA 30083

Dear DANIEL L JACK:

SPS acknowledges receipt of your correspondence which was received on 01/20/2022 regarding the above referenced acco In your correspondence, you requested information regarding the name of the "owner" of the account, sometimes also referre as the "investor," "creditor," and/or "note holder."

Towd Point Mortgage Trust 2020-2, U.S. Bank National Association, as Indenture Trustee is the owner of the account, and SP the mortgage servicer of the account.  Contact information for the owner of the account is provided below:

Rodney Square North
1100 North Market Street
Wilmington, DE 19890

The information provided above is based upon a review of our records as of the date of this letter. Account ownership status r change from time to time.

As the mortgage servicer, SPS is authorized to collect all payments and administer the terms of the note and security Instrum Questions or disputes regarding the account and any requests for mortgage assistance should be directed to SPS in orde ensure a timely response and resolution.

SPS is committed to home retention and offers many assistance options designed for customers who are experiencing tempo or permanent hardship. These options are offered at no cost to our customers and may include structured repayment pl: mortgage modifications, or account settlement alternatives. If you are experiencing a financial hardship, please call us as soor possible to discuss your situation and the options that may be available to you.

If other items were raised in your correspondence, they will be addressed under separate cover.

If you have any questions or concerns, please contact SPS directly at 800-258-8602. Representatives are available Mon through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llámenos al numero 800-831-011 seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

AC4*1 2791                                                                                                                                        01/*012979

    

# EXHIBIT

# "D"

# EXHIBIT

🔒 **spservicing.com**

 

**PAYOFF STATEMENT**
Date: September 13, 2021
Requested By:

Account Number: 0028612638
Payment Due Date: September 15, 2021

**This Statement expires on October 13, 202**

CUSTOMER
1185 TO LANI DR
STONE MOUNTAIN, GA 30083

Customer Name/Property Address:
DANIEL L JACK
ROSA JACK
1185 TO LANI DR
STONE MOUNTAIN, GA 30083

**THE FOLLOWING AMOUNTS ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS**

| ITEMIZATION | | |
|---|---|---|
| Unpaid Principal Balance | $ | 189,399.68 |
| Interest Calculated to October 13, 2021 | $ | 1,042.08 |
| Loan Level Advance Balance | $ | 10,172.23 |
| Interest on Advances | $ | 144.33 |
| Recording Fee | $ | 25.00 |
| | | |
| **Total Amounts Due Under your Note and Mortgage** | $ | 200,783.32 |
| Per Diem Daily Interest | | $ 17.81 |
| **TOTAL AMOUNT DUE** | $ | 200,783.32 |

 

**IMPORTANT INFORMATION REGARDING THE ACCOUNT PAYOFF:**

1) **Clearance of Funds:** The Payoff Statement assumes that payments made on your account ha
cleared your financial institution. If a payment you made is returned, you are still responsible to p
that amount, even though we accept the amount of your payoff. Payments received within thirty (3

"E"

EXHIBIT

December 1, 2021

Daniel L. Jack & Rosa Jack
1185 To Lani Drive
Stone Mountain, GA 30083

Select Portfolio Servicing, Inc.
Post Office Box 65250
Salt Lake City, UT 84165-0250

RE: Dispute of the balance on loan Acc. No.0028612638

Dear Select Portfolio Servicing, Inc.

On or about September 13, 2021, I received a payoff statement from you that advised that the total amounts due under my Note and Mortgage was $200,873.32. However, my most recent billing statement from you, dated 11/29/2021, advises that the total amount due under my Note and Mortgage is $198,274.38.

I dispute the balance of $198,274.38 for my loan account as being inaccurate and higher than the actual amount I owe on the loan. Accordingly, since I dispute the accuracy of the current stated balance of my loan account as being $198,274.38, I am forwarding you a Cashiers check in the amount of $20,000.00 as a full and final settlement of the above disputed amount. Your execution of this check is your tacit agreement to settle the above-mentioned account.

Thanking you in advance,

Sincerely,

Daniel L Jack
Rosa Jack

"F"

EXHIBIT

PRINTED ON LINEMARK PAPER - HOLD TO LIGHT TO VIEW - FOR ADDITIONAL SECURITY FEATURES SEE BACK

## CASHIER'S CHECK

6700801291

| 0067008 | 11-24 |
| Office AU # | 1210(8) |

SPS, Inc
Account #
002 8612638

Remitter:
Operator I.D.:

DANIEL JACK
u829181 u829181

December 10, 2021

PAY TO THE ORDER OF   ***SELECT PORTFOLIO SERVICING, INC***

**$20,000.00**

**Twenty Thousand  and 00/100  US Dollars **

VOID IF OVER US $  20,000.00

Payee Address:

Memo:

Authorized Signature

WELLS FARGO BANK, N.A.
2283 GLENWOOD AVE SE
ATLANTA, GA 30316
FOR INQUIRIES CALL (480) 394-3122

⑈6700801291⑈ ⑆121000248⑆ 4861 513315⑈

Details on Back
Security Features Included

ENDORSE HERE

X _____

_____

_____

☐ CHECK HERE IF MOBILE OR REMOTE DEPOSIT

AT _____ (FINANCIAL INSTITUTION NAME)

0248148315

MP

By cashing this check Wells Fargo/SPS Agrees:

1. To except this $20,000 payment in lieu of

2. The $189,274.38 disputed debt on account

No. N6.0028612638.

Chemical Wash
Detection Box

COLOR INSIDE THIS BOX
SHOULD BE WHITE

REPLICATING, FORGING OR ALTERING THIS HIGH SECURITY
CHECK IS EXTREMELY DIFFICULT DUE TO THESE FEATURES

| SECURITY FEATURES | DO NOT CASH IF: |
|---|---|
| True Watermark Paper | • A distinctive pattern is not visible in the paper when held to light |
| Chemically Sensitive Paper | • Stains or colored spots appear on front or back |
| Heat Sensitive Ink | • Pink icon does not fade and reappear when warmed with finger or breath |
| Chemical Wash Detection Box | • Stains or discoloration appear in this area |
| Fugitive Ink on Back | • Ink on back looks pink or has disappeared |
| Toner Adhesion | • Printed information appears tampered with |
| Invisible Fibers | • White and blue fibers are not visible under ultraviolet light |
| VOID Indication | • "VOID" appears in this box |
| Security Weave™ on Backer | • "ORIGINAL DOCUMENT" does not appear on back |

🔒 Security features listed and unlisted exceed industry standards.
🔒 Padlock design is a certification mark of Check Payment Systems Association

MobileMark™: Mobile Deposit check mark to indicate check has been
deposited via mobile device.

"G"

EXHIBIT

11:06      .ıll LTE 🔋

🔒 spservicing.com    ↻

**SPS** SELECT *Portfolio* SERVICING, *inc.*

Sign up for paperless delivery at www.spservicing.com   Paperless 

December 17, 2021

DANIEL L JACK
ROSA JACK
1185 TO LANI DR
STONE MTN, GA 30083

Account Number:      0028612638
Customer Name:      DANIEL L JACK
     ROSA JACK
Property Address:      1185 TO LANI DR
     STONE MOUNTAIN, GA 30083

Dear DANIEL L JACK:

SPS received your recent inquiry(ies) on 12/15/2021. We will review your request(s) and route to the appropriate department for handling. If a response is required, one will be provided to you within 30 days from the date we received your inquiry(ies).

SPS is committed to home retention and offers many assistance options designed for customers who are experiencing temporary or permanent hardship. These options are offered at no cost to our customers and may include special payment arrangements, structured repayment plans, or loan modifications. If you are experiencing a financial hardship, please call us as soon as possible at the number listed below to discuss your situation and options that may be available to you.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 800-258-8602 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

"H"

EXHIBIT

Date: *January 11, 2022*      *Wells Fargo PhotoCopy Request*      Page 1 of 2

*Reference: 1002709451520:1002709451520:1002709427522*





**R/T Number**     10700543
**Sequence Number** 8519642186
**Account Number**   4861513315

**Processing Date**   20211221
**Amount**         20000.00
**Check Number**    6700801291

"I"

EXHIBIT

January 6, 2022

Daniel L. Jack & Rosa Jack

1185 To Lani Drive

Stone Mountain, GA 30083

Select Portfolio Servicing, Inc.

Post Office Box 65250

Salt Lake City, UT 84165-0250

RE: Demand for Release of Lien on Loan Acc. No. 0028612638

Dear Select Portfolio Servicing, Inc.,

On or about December 1, 2021, we forwarded you letter advising that we disputed the balance of our loan account as being inaccurate and higher than the actual amount we owed. The November 29, 2021 billing statement, from you, indicated that our account balance was $198,274.38. Accordingly, our letter advised you that we would forward you a cashier's check in the amount of $20,000.00 as a full and final settlement to settle the disputed debt amount of $198,274.38. Additionally, and more specifically, our letter advised you that your execution of this check is your tacit agreement to settle the above-mentioned account. See copy of Letter. On or about December 10, 2021, we forwarded you a cashier's check in the amount of $20,000.00, which you subsequently cashed on or about December 25, 2021. Accordingly, we thank for your acceptance of our settlement offer and therefore demand that you file the release of lien within 30 days of receipt of this letter.

Sincerely,

*Daniel L Jack*

*Rosa Jack*

FILED 3/25/2022 8:31 AM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

# IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **DANIEL JACK,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **FILE NO: 22CV3113** |
| | ) | |
| **V.** | ) | |
| | ) | |
| **SELECT PORTFOLIO SERVICING,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED AFFIDAVIT OF SERVICE

Personally appeared before me, an officer duly authorized by law to administer oaths, the person of
<u>KYLE HUDSON</u> (Server), who after first being duly sworn, and states:

1.  My name is KYLE HUDSON, and I am competent in all respects to testify regarding the matters
    set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I
    have no interest in the outcome of the above-styled action and am not related to any of the parties.

2.  I am a resident of the State of Georgia and a citizen of the United States of America and I am
    over the age of twenty-one (21). I have been appointed as a Process Server in the Superior Court
    of DeKalb County and have been assigned to perfect service of process of the Summons, Verified
    Complaint and Affidavit of Daniel Jack and upon Select Portfolio Servicing, Inc., the above-
    named defendant.

3.  On Wednesday, March 23rd, 2022, at approx. 3:57 p.m. at the 2 Sun Court, Suite 400,
    Peachtree Corners, GA 30092 address, I personally served the Summons, Verified Complaint
    and Affidavit of Daniel Jack and upon Select Portfolio Servicing, Inc., the above-named
    defendant by placing said service documents in the hands of a woman (a black female,
    who identified herself as Alisha M. Smith, CSC Coordinator for Thompson O'Brien
    Kemp & Nasuti, P.C., the registered agent).

This 24th day of March 2022.

Sworn to and subscribed before me
This the ____24th____ day of March 2022.

_____
Notary Public

My Commission expires on ____5-7-2023____

_____
Signature

____Kyle Hudson____
Printed Name of Process Server